| | |
|---|---|
| District Court, Larimer County, Colorado<br>Larimer County Justice Center<br>201 LaPorte Avenue, Suite 100<br>Fort Collins, CO 80521<br>(970) 494-3500 | DATE FILED: July 19, 2023 10:12 AM<br>FILING ID: 21671834EC78C<br>CASE NUMBER: 2023CV30551 |
| ASTRID, Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY, COLORADO, Defendant. | ▲ COURT USE ONLY ▲ |
| Stewart W. Olive, AR 16134<br>Daniel Sapienza, AR 54589<br>MARCH, OLIVE & SAPIENZA, LLC<br>Attorneys for Plaintiff<br>1312 South College Avenue<br>Fort Collins, CO  80524<br>Telephone: (970) 484-3990<br>e-mail: stewart@olivelaw.com<br>          dan@mosllc.law | Case No.<br><br><br><br><br><br><br>Courtroom |
| COMPLAINT | |

COMES NOW the above-named Plaintiff, by and through her attorneys, March, Olive & Sapienza, LLC, and brings this Complaint against the above-named Defendant, its employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

## INTRODUCTION

1. Plaintiff brings this action under the Takings Clauses of the United States and Colorado Constitutions, and 42 U.S.C. § 1983, challenging Defendant's acts, orders, policies, practices, customs, and procedures, which deprived Plaintiff of her property without just compensation.

1

2. As set forth in this Complaint, the acts, orders, policies, practices, customs, and procedures of Defendant were the cause of, and the moving force behind, the constitutional violations in this case.

3. Plaintiff seeks a judgment awarding damages and compensatory damages for the taking of Plaintiff's property and other damages without just compensation.

4. Plaintiff also seeks an award of her reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States and of the State of Colorado.

6. Venue is proper under C.R.C.P. 98 because the events or omissions giving rise to Plaintiff's claims occurred in this district.

7. This Court has personal jurisdiction over Defendant as an entity of the State of Colorado.

## PLAINTIFF

8. Plaintiff Astrid is an individual residing in Larimer County, Colorado and is the owner of record of a certain parcel of real property located in Larimer County commonly known as 51 Profile Rock, Bellvue, Colorado.

## DEFENDANT

9. Defendant Board of County Commissioners of Larimer County is the governing entity for Larimer County and all acts of Larimer County are exercised by the Board of County Commissioners. Pursuant to C.R.S. § 30-11-105, all suits against a county in the State of Colorado must be brought against the Board of Commissioners of that county.

## GENERAL ALLEGATIONS

10. Plaintiff is owner of one of 8 parcels of real property (collectively "Profile Rock Community") which are located on the south side of the Cache La Poudre River ("River") in Larimer County, Colorado.

11. In the area of the Profile Rock Community, Colorado Highway 14 ("Highway") runs on the north side of the River.

12. Access to all of the parcels in the Profile Rock Community to the Highway was via a one lane private bridge ("Bridge"), which crossed the River.

13. Upon information and belief, the Bridge was constructed sometime in the 1940's.

14. The Bridge was supported by two support piers, a North Pier and a South Pier.

15. There is no other viable means to access the Profile Rock Community except via the Bridge.

16. On or about July 20, 2021, a rainstorm ("Rainstorm") occurred which poured rain onto the Black Hollow Basin which is located to the west and south of the Profile Rock Community.

17. The vegetation in the Black Hollow Basin was badly damaged by the Cameron Peak fire during the summer of 2020, limiting the capacity of the ground to absorb rainfall.

18. The Rainstorm caused a large amount of water and debris to come down Black Hollow Creek and into the River causing the level of the River to rise.

19. The Bridge is located approximately 1.25 miles downstream of the confluence of Black Hollow Creek and the River.

20. Significant amounts of Debris carried by the River collided with the Bridge and piled up near the north end of the Bridge.

21. The debris displaced one of five wooden members and tilted one of five wooden members of the North Pier.

22. The increased flow of the River scoured and undermined the South Pier causing it to rotate and tip sideways, partially into the River.

23. The day following the Rainstorm, despite the considerable amount of debris that had collided with the Bridge, the Bridge remained standing with a visible vertical dip.

24. The day after the Rainstorm, Larimer County retained Short Elliott Hendrickson, Inc., dba SEH Engineering (SEH) to assess the damage to the Bridge and two neighboring bridges.

25. On or about July 21, 2021, Larimer County engineers visually inspected the bridge and two other bridges on the river. Despite the large amount of debris and visible vertical sag, the assessment noted that the "superstructure [was] currently stable but will become unstable if additional debris hits it." The assessment recommended that the bridge be removed or "further investigation be conducted to determine if the structure can be temporarily stabilized," noting the risk of downstream damage if additional debris were to hit the bridge.

26. On or about July 23, 2021, SEH engineers Steve Kaye and Paul Jordan visited the Bridge to assess overall conditions "in terms of load carrying capacity, potential repair options, and potential for replacements. SEH concurred with Larimer County's recommendation to prohibit vehicle traffic on the Bridge and to remove the current structure and debris pile."

27. On or about July 28, 2021, Defendant's Code Official issued a Notice of Imminent Danger, finding that if additional debris hit the Bridge and if the Bridge then broke into pieces and floated downstream, it could result in a risk to other bridges downstream.

28.     The Notice of Imminent Danger noted that the finding of imminent danger was also supported by an inability to repair of the Bridge due to potential costs and waterway conveyance building code requirements:

> Repair of the Profile Rock Bridge is not feasible. To leave an existing 3-span bridge in the waterway that may sustain further damage due to additional flooding or debris flow from the Black Hollow area creates life-safety and property damage issues. To attempt to retrofit a new superstructure on top of an already deteriorated concrete substructure is problematic. As well, the cost to repair the existing structure may be considerable and nearly the same cost as constructing a full replacement which meets or exceeds waterway conveyance requirements and removes inherent risk that piers pose in the water.

29.     The Notice of Imminent Danger directed Plaintiff and other owners in the Profile Rock Community to not to use the Bridge and informed them that they had 15 days to appeal the decision to the Larimer County Board of Appeals:

### RIGHT TO APPEAL

> Any person directly affected by this Notice of Imminent Danger or order shall have the right to appeal to the Larimer County Board of Appeals, provided that a written application of appeal is filed within fifteen (15) days after the date of this Notice of Imminent Danger being posted. An application for appeal shall be based on a claim that the true intent of this Code or the rules legally adopted thereunder have been:
> 1. the true intent of this Code or the rules incorrectly interpreted;
> 2. the provisions of this Code do not fully apply; or
> 3. the requirements of this Code are adequately satisfied by other means.

30.     On or about July 28, 2021 and simultaneous with the Notice of Imminent Danger, Defendant's Code Official issued a Notice of Demolition, stating that the Bridge was to be demolished beginning on July 29, 2021 and to be concluded by August 3, 2021.

31.     The Notice of Demolition noted that no appeal to the simultaneously posted Notice of Imminent Danger had been filed by the time of posting the Notice of Demolition.

32. On or about July 28, 2021 and simultaneous with the Notice of Imminent Danger and the Notice of Demolition, Defendant's Code Official issued an Order for Demolition ordering the Bridge to be demolished beginning on July 29, 2021.

33. The Order for Demolition noted the 15-day appeals period described in the simultaneously posted Notice of Imminent Danger and stated that no appeal had yet been filed.

34. Plaintiff objected to the demolition of the Bridge and provided the Defendant's staff with a temporary stabilization plan July 29, 2021, prepared with the assistance of a licensed professional engineer with bridge construction and repair experience.

35. On or about August 2, 2021, Plaintiff's licensed professional engineer proposed to Defendant's staff a stabilization plan that included replacement of the center pier.

36. Defendant's engineer responded that no center pier would be allowed by the current code.

37. Defendant's staff refused to consider Plaintiff's alternatives to the removal of the Bridge.

38. Defendant's staff removed the Bridge on August 4, 2021.

39. On or about August 6, 2021, SEH issued a detailed report of its findings and opinions from its inspection and analysis of the Bridge. SEH emailed the report to Defendant's staff.

40. SEH stated in its August 6, 2021 report that the Bridge should not be used until repairs are made to restore the load carrying capacity of the Bridge. SEH also stated:

> After the debris is removed, a more detail assessment of the superstructure elements should be performed to confirm that the structure can be adequately supported the necessary loads. Superstructure elements that have been damaged either by flood, fire, or other condition should be replaced or repaired, unless it is confirmed by a qualified engineer that they are structurally adequate in their current condition.

41. The August 6, 2021 SEH report did not recommend removal of the Bridge. The August 6, 2021 SEH report stated it did not contain a SI&A report. An SI&A report is a "Structural

Inventory & Appraisal" is the Federal Structure Sufficiency Rating for bridges which assesses the structural adequacy, safety, serviceability, and functional obsolescence of bridges.

42. The Defendant's staff made approximately twenty written changes and comments, requested alterations to the August 6, 2021, SEH report.

43. Following the Defendant's staff's written comments and recommendations, SEH altered its report regarding the Bridge and issued a new version dated August 13, 2021.

44. In its SEH's August 13, 2021 report, SEH added the following language which was not contained in earlier versions of its reports:

> For public safety, due to the age and observed condition of the bridge and the potential of additional floods, debris flows, and the location of the bridge with respect to recent fires we recommend the bridge be replaced or repaired in accordance with current Larimer County private vehicular bridge requirements.

45. Defendant refused Plaintiff's multiple requests for the Defendant to replace the Bridge.

46. The removal of the Bridge has deprived the Plaintiff of the only means to access her property.

47. Plaintiff has a statutory and common law right to access her property. State of Colorado State Highway Access Code Volume 2, Code of Colorado Regulations 601-1 § 1.2(3), § 2.6(8) ("Property owners have the right of reasonable access to the general street system."; "Action pursuant to the Code initiated by the local authority or Department against an existing legal access either to revoke, suspend, limit, reconstruct, relocate or modify the access may be accomplished pursuant to either the Administrative Procedure Act, article 4 of title 24, C.R.S., or the government powers of eminent domain."); C.R.S. § 43-2-147(1)(b). State Department of Highways, Division, State of Colorado v. Interstate-Denver West, 772 P.2d 649 (Colo. App. 1988).

48.     The right of access is the right of a landowner who abuts on a street or highway to reasonable ingress and egress.  Minnequa Lumber Co. v. City & County of Denver, 67 Colo. 472, 186 P. 539 (1919).  Property is said to abut upon a street or highway when there is no intervening land between it and such street or highway.  Radinsky v. Denver, 159 Colo. 134, 410 P.2d 644 (1966).  See also Kemp v. Seattle, 149 Wash. 197, 270 P. 431 (1928).  An abutting landowner is entitled to compensation when his access is denied or substantially damaged. Minnequa Lumber Co. v. City & County of Denver, supra; Roth v. Wilkie, 143 Colo. 519, 354 P.2d 510 (1960). Compensation is required when the remainder is damaged by a substantial limitation or loss of access.  State Department of Highways v. Davis, 626 P.2d 661 (Colo.1981).

49.     Plaintiff has received no just compensation from Defendant for the taking of her property.

50.     On or about August 8, 2021, Plaintiff caused a Notice of Claim pursuant to C.R.S. § 24-10-109 to be provided to Defendant.  On or about January 18, 2022, Plaintiff caused an Amended Notice of Claim pursuant to C.R.S. § 24-10-109 to be provided to Defendant.

FIRST CLAIM FOR RELIEF– COLORADO TAKINGS CLAUSE
(Colo. Const. art. II, § 15.)
(Inverse Condemnation)

51.     Plaintiff hereby incorporates by reference paragraphs 1 through 50 as if fully restated herein and further alleges as follows:

52.     Defendant's actions are a seizure of Plaintiff's property without just compensation, all in violation of Article II, § 15 of the Colorado Constitution.

53.     Colo. Const. art. II, § 15 of the Colorado Constitution requires the payment of just compensation upon a taking of private property by Defendant.

54.     Defendant has the power of eminent domain but has refused to exercise its powers.

55. Defendant's Bridge Removal Order has caused the removal of destruction of Plaintiff's property interest in the bridge, thereby effectively taking her access and value of her property through governmental policy and regulation without offering any compensation for these takings.

56. Defendant's Bridge Removal Order did not substantially advance a legitimate state interest.

57. Defendant's Bridge Removal Order denied Plaintiff of any viable use of her property.

58. Defendants' Bridge Removal Order required Plaintiff to sacrifice all beneficial uses of her property in the name of the common good.

59. As outlined above, Defendant has taken Plaintiff's property for public use without providing just compensation.

60. As a result of Defendant's actions and failure to pay just compensation, Plaintiff has been injured and suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Court find in her favor, for actual damages, costs of suit, fees of experts, attorney's fees, pre- and post-judgment interest, and for such other and further relief as the Court deems just and reasonable.

### SECOND CLAIM FOR RELIEF – SUBSTANTIVE DUE PROCESS
(42 U.S.C. § 1983)

61. Plaintiff hereby incorporates by reference paragraphs 1 through 60 as if fully restated herein and further alleges as follows:

62. On July 28, 2021, Defendant posted the Notice of Imminent Danger, which stated that any party affected by the notice could file an appeal within 15 days.

63. On July 28, 2021, simultaneously with the Notice of Imminent Danger, Defendant posted the Notice of Demolition, which stated as a factor in the demolition decision that at the time of posting, no party had filed an appeal of the Notice of Imminent Danger.

64. On July 28, 2021, simultaneously with the Notice of Imminent Danger and Notice of Demolition, Defendant posted the Order for Demolition, which stated as a factor in the demolition decision that at the time of posting, no party had filed an appeal of the Notice of Imminent Danger.

65. On August 4, 2021, seven days after the posting of the notice of appeal and 8 days before the end of the appeal period, Defendants removed the Bridge.

66. Defendant gave official notice of an appeal process and cited the failure of any party to use that process as support for the demolition of the Bridge.

67. Defendant gave no party an opportunity to exercise the appeal process.

68. Defendant's actions were an arbitrary exercise of governmental power that deliberately, intentionally, or recklessly deprived Plaintiff of life, liberty, and property without due process of law.

69. Defendant's notice of an appeal process that Plaintiff was prevented from using was governmental action so arbitrary as to shock the conscience.

WHEREFORE, Plaintiff respectfully requests that this Court find in her favor, for actual damages, costs of suit, fees of experts, attorney's fees, pre- and post-judgment interest, and for such other and further relief as the Court deems just and reasonable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 19th day of July, 2023.

MARCH, OLIVE & SAPIENZA, LLC
*Original Signature on File*


/S Stewart W. Olive
Attorney at Law