IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02051-PAB-JPO

ASTRID,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY, COLORADO,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF 26) [Docket No. 34] filed by the Board of County Commissioners of Larimer County, Colorado. Plaintiff Astrid[1] filed a response, *see* Docket No. 36, and defendant filed a reply. Docket No. 42. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.   BACKGROUND[2]

Plaintiff is an individual who resides in Larimer County, Colorado (the "County"). Docket No. 26 at 2, ¶ 9. Defendant is the governing entity for the County. *Id*. at 3, ¶ 10. Plaintiff owns one of eight properties (collectively, the "Profile Rock Community") located in the County on the south side of the Cache La Poudre River (the "River"). *Id*.,

---

[1] The complaint identifies plaintiff "Astrid" by one name. *See* Docket No. 26 at 2, ¶ 9 ("Plaintiff Astrid is an individual.").

[2] The facts below are taken from plaintiff's amended complaint, Docket No. 26, and are presumed to be true for purposes of ruling on defendant's motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

¶ 11.  The only method for accessing the Profile Rock Community was through a one lane private bridge (the "Bridge") across the River, which connected the eight properties to Colorado Highway 14.  *Id*., ¶¶ 12-13, 16.  The Bridge was supported by two support piers: a wooden North Pier and a concrete South Pier.  *Id*., ¶ 15.  The concrete South Pier was located in the River.  *Id*.  The Bridge was constructed sometime in the 1940s.  *Id*., ¶ 14.

In 1986, the River was designated as part of the federal National Wild and Scenic Rivers System (the "System"), which was created "to preserve certain rivers with outstanding natural, cultural, and recreational values in a free-flowing condition for the enjoyment of present and future generations."  *Id*., ¶¶ 17-18.  Within the System, the River's management plan encourages the modification or removal of low bridges and pylons on a voluntary basis.  *Id*. at 4, ¶ 19.  Officials at the United States Department of Agriculture ("USDA") informed County officials that the Bridge should have no in-stream supports and should be higher.  *Id*., ¶ 22.  The County's code requirements for all bridges on the River were established according to the System's guidelines.  *Id*., ¶ 21.  The County has an interest in maintaining the status of the River as a Wild and Scenic River.  *Id*., ¶ 20.

On July 20, 2021, a rainstorm caused debris and excess water to flow down the River.  *Id*., ¶¶ 23, 25.  Significant amounts of debris collided with the Bridge and piled up near the North Pier.  *Id*., ¶ 27.  Although the North Pier did not fail, the debris displaced or tilted two of the five wooden members of the North Pier.  *Id*. at 5, ¶ 28.  The increased water flow undermined the South Pier, causing the pier to "rotate and tip

sideways, partially into the River." *Id*., ¶ 29.  Although the Bridge remained standing, there was a visible "vertical dip" in the Bridge of less than one foot.  *Id*., ¶ 30.

On July 21, 2021, the County's engineers inspected the Bridge and two other bridges on the River.  *Id*., ¶ 32.  The County engineers' assessment noted that the structure was "currently *stable* but will become unstable if additional debris hits it."  *Id*.  The assessment recommended the removal of the Bridge or that "further investigation be conducted to determine if the structure can be temporarily stabilized," noting the risk of downstream damage if additional debris hit the Bridge.  *Id*.  On July 23, 2021, the County provided a Right of Entry Agreement to the owners of the Profile Rock Community, whereby the owners would voluntarily agree to the County removing the Bridge.  *Id*., ¶ 33.  The owners refused to sign the agreement.  *Id*.

On July 28, 2021, the County's code official issued a Notice of Imminent Danger, pursuant to Section 109 of the County's Property Maintenance Code, prohibiting the crossing of the Bridge.  *Id*. at 6, ¶ 35; *see also* Docket No. 34-1 at 1-2.[3]  The Notice of

---

[3] Defendant requests that the Court consider the Notice of Imminent Danger, which is a document outside of the pleadings.  Docket No. 34 at 4 & n.2; *see also* Docket No. 34-1.  Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d). However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").  The Court will consider the Notice of Imminent Danger because the document is referenced in plaintiff's amended complaint, is central to the claims, and the parties do not dispute the document's authenticity.

Imminent Danger concluded that, if additional debris hit the Bridge, the Bridge could collapse into pieces creating risks downstream to property and human life.  Docket No. 26 at 6, ¶ 35; Docket No. 34-1 at 1.  The notice found that it was "not feasible" to repair the Bridge because "the cost to repair the existing structure may be considerable and nearly the same cost as constructing a full replacement which meets or exceeds waterway conveyance requirements and removes inherent risk that piers pose in the water."  Docket No. 26 at 6, ¶ 36.  The notice stated that any affected person "shall have the right to appeal to the Larimer County Board of Appeals" within 15 days.  *Id*. at 6, 12, ¶¶ 37, 78.  The appeal deadline was therefore August 12, 2021.  *Id*. at 6, ¶ 38.

On July 28, 2021, simultaneous with issuing the Notice of Imminent Danger, the code official issued (1) a Notice of Demolition, stating that the Bridge would be demolished between July 29 and August 3, 2021; and (2) an Order for Demolition, ordering the demolition of the Bridge to begin on July 29, 2021.  *Id*. at 7, ¶¶ 39, 41.  The Notice of Demolition and Order for Demolition stated that no interested party had filed an appeal, even though there were 14 days left to file an appeal.  *Id*., ¶¶ 40, 42.

On July 29, 2021, plaintiff objected to the demolition of the Bridge and provided defendant's staff with a temporary stabilization plan prepared by a licensed professional engineer.  *Id*., ¶ 43.  Plaintiff's engineer informed defendant's staff that the Bridge was not an imminent danger.  *Id*., ¶ 45.  On August 2, 2021, plaintiff's engineer gave defendant's staff a stabilization plan to replace the center pier, which would restore the functional capacity of the Bridge.  *Id*. at 7-8, ¶ 46.  Defendant's engineer responded that the current code does not allow center piers in rivers.  *Id*. at 8, ¶ 47.  Plaintiff's engineer subsequently provided a stabilization plan that did not include a center pier, but

4

defendant refused to consider the plan.  *Id*., ¶¶ 48-49.  Defendant gave "no party an opportunity to exercise the appeal process" and failed to offer plaintiff a hearing before demolishing the Bridge.  *Id*. at 13, ¶ 83.

Defendant performed temporary repairs to allow pickup trucks to drive across the Bridge, demonstrating that the Bridge was repairable.  *Id*. at 8, ¶¶ 50-51.  However, on August 4, 2021, defendant demolished the Bridge.  *Id*., ¶ 51.  Defendant did not approve repairing the Bridge and instead demolished it because the proposed in-stream pylons would "interfere with the natural, cultural, and recreational value of the River." *Id*., ¶ 52.  The demolition furthered the County's goal of preserving the River's status as a Wild and Scenic River.  *Id*., ¶ 53.  The removal of the Bridge was unnecessary because the Bridge could have been repaired and did not pose an imminent danger to human life or property.  *Id*. at 13, ¶ 89.  The removal of the Bridge has deprived plaintiff of the only means to access her property.  *Id*. at 10, ¶ 62.  Defendant has not provided any compensation to plaintiff.  *Id*. at 11, ¶ 65.

Plaintiff filed this case in the District Court for Larimer County, Colorado on July 19, 2023, *see* Docket No. 1-1 at 1, and defendant removed the case to this Court on August 14, 2023.  Docket No. 1.  Plaintiff asserts two claims in her amended complaint: (1) an "inverse condemnation" or takings claim under Article II, Section 15 of the Colorado Constitution; and (2) a Fourteenth Amendment substantive and procedural due process claim pursuant to 42 U.S.C. § 1983.  Docket No. 26 at 11-13, ¶¶ 67-91.

II.   **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes

5

the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III. ANALYSIS

#### A. <u>Due Process Claim</u>

Plaintiff's second claim asserts a due process claim under the Fourteenth Amendment, alleging a violation of both substantive and procedural due process. Docket No. 26 at 12-13, ¶¶ 77-91. The Fourteenth Amendment prohibits a state from depriving a person of "property without due process of law." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting U.S. Const. Amend. XIV). "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Id*.

##### 1) *Procedural Due Process*

In analyzing a procedural due process claim, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montoya*, 662 F.3d at 1167 (citation omitted); *see also Reed v. Goertz*, 598 U.S. 230, 236 (2023). "The essence of procedural due process is the provision to the affected party of some kind of notice and some kind of hearing." *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (internal alterations, quotations, and citation omitted).

The following factors (the "*Mathews* factors") are relevant to whether an individual was afforded an appropriate level of process: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hattrup v. United States*, 845 F. App'x 733, 737 (10th Cir. 2021) (unpublished) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Ultimately, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. (quoting *Mathews*, 424 U.S. at 334).

Defendant argues that plaintiff has failed to allege the second element of her procedural due process claim because the amended complaint reveals that plaintiff was provided "*some* kind of notice and . . . *some* kind of hearing" prior to the removal of the Bridge. Docket No. 34 at 13 (quoting *Moore*, 507 F.3d at 1259).[4] Defendant contends that it afforded plaintiff the opportunity to object to the removal of the Bridge by (i) "rejecting a Right of Entry Agreement offered by Larimer County;" and (ii) "by hiring an engineer and presenting multiple alternative plans for repair of the bridge to Larimer County officials." *Id*. (citing Docket No. 26 at 5, 7-8, ¶¶ 33, 43, 45-49). Defendant asserts that a "state's violation of its own laws does not create a claim under § 1983."

---

[4] Defendant does not challenge the first element of the procedural due process claim, namely, whether plaintiff possesses a "protected interest" in the Bridge such that the due process protections were applicable. *See Montoya*, 662 F.3d at 1167. Accordingly, the Court presumes that plaintiff has adequately pled this element.

8

*Id*. (quoting *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 947 (10th Cir. 2003)).  In its argument, defendant does not address any of the *Mathews* factors.[5]

Furthermore, defendant argues that plaintiff's procedural due process claim is "precluded by the existence of an adequate post-deprivation remedy," *id*. at 14 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)), given that Colo. Rev. Stat. § 38-1-101 provides post-deprivation proceedings for inverse condemnation.  *Id*.  Defendant claims that plaintiff has failed to plead any facts suggesting that the post-deprivation proceedings were "inadequate or that such procedures were unavailable to her."  *Id*. (citing *Harris v. Chabries*, 114 F. App'x 363, 365 (10th Cir. 2004) (unpublished); *Freeman v. Dep't of Corrs*., 949 F.2d 360, 362 (10th Cir. 1991)).

Plaintiff responds that she was not afforded an adequate level of process prior to the removal of the Bridge.  Docket No. 36 at 12.  Plaintiff asserts that she never received any "meaningful hearing" before the Larimer County Board of Appeals, despite the fact that the Notice of Imminent Danger stated that she had two weeks to file an appeal.  *Id*.  Plaintiff disputes that the "back and forth" between plaintiff, her engineer, and defendant's staff constitutes an impartial hearing.  *Id*.  Furthermore, plaintiff argues that defendant cannot claim that plaintiff has adequate post-deprivation remedies under

---

[5] In a footnote, defendant appears to argue that it could demolish the Bridge without providing a hearing because the County was facing an emergency situation.  *See* Docket No. 34 at 12 n.4 ("Although not clearly pled, there is some indication in the [amended complaint] that Larimer County was faced with an emergency situation in confronting the risk that the bridge might ultimately collapse unexpectedly.").  The Court declines to consider this cursory argument raised in a footnote.  *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (citation and internal quotations omitted)); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

state law for inverse condemnation when defendant simultaneously moves to dismiss that state law claim. *Id*. at 13.

The Court finds that plaintiff has plausibly alleged the second element of her procedural due process claim. The amended complaint alleges that, on July 20, 2021, significant amounts of debris collided with the Bridge due to a rainstorm. Docket No. 26 at 4, ¶¶ 23, 25, 27. Defendant posted the Notice of Imminent Danger on July 28, 2021, stating that any affected person "shall have the right to appeal to the Larimer County Board of Appeals" within 15 days. *Id*. at 6, 12, ¶¶ 35, 37, 78; *see also* Docket No. 34-1 at 2. On July 29, 2021, plaintiff objected to the demolition of the Bridge. Docket No. 26 at 7, ¶ 43. However, defendant gave "no party an opportunity to exercise the appeal process" and failed to offer plaintiff a hearing before demolishing the Bridge on August 4, 2021. *Id*. at 12-13, ¶¶ 81, 83. The Court finds that these allegations are sufficient at the motion to dismiss stage to allege that plaintiff was not afforded an appropriate level of process. *See Montoya*, 662 F.3d at 1169 (holding that the complaint sufficiently alleged the second element of a procedural due process claim because the officer gave plaintiff "no process before placing him in the sex offender probation unit"); *Mathews*, 424 U.S. at 333 ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."); *Miller v. City of Mission, Kan*., 705 F.2d 368, 372 (10th Cir. 1983) ("An impartial tribunal is an essential element of a due process hearing.").

Moreover, the Court rejects defendant's argument that plaintiff's procedural due process claim is "precluded by the existence of an adequate post-deprivation remedy." *See* Docket No. 34 at 14. The Supreme Court and the Tenth Circuit have held that "a

10

post-deprivation remedy does not satisfy due process 'where the property deprivation is effected pursuant to an *established state procedure*.'" *Johnson v. Whitney*, 723 F. App'x 587, 593 (10th Cir. 2018) (unpublished) (quoting *Hudson*, 468 U.S. at 534) (emphasis added); *see also Tennyson v. Carpenter*, 558 F. App'x 813, 822 (10th Cir. 2014) (unpublished).  In contrast, "'[w]here a loss of property is occasioned by *a random, unauthorized act* by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur,' thus rendering a pre[-]deprivation hearing 'not only impracticable, but impossible.'" *Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) (quoting *Hudson*, 468 U.S. at 532) (emphasis added). Under "such circumstances, due process is satisfied so long as 'a meaningful post[-]deprivation remedy for the loss is available.'" *Id*. (quoting *Hudson*, 468 U.S. at 533). Here, the code official issued the Notice of Imminent Danger pursuant to Section 109 of the County's Property Maintenance Code.  Docket No. 34-1 at 1.  The demolition proceedings were therefore instituted pursuant to an established state procedure, rather than a "random, unauthorized act by a state employee."  *See Requena*, 893 F.3d at 1212; *see also Oakley v. Zavares*, No. 09-cv-01991-WYD-KMT, 2010 WL 4256190, at *7 (D. Colo. Aug. 16, 2010), *recommendation adopted*, 2011 WL 198405 (D. Colo. Jan. 20, 2011) (finding defendants' assertion that post-deprivation remedies were "available" under *Hudson* was "inapposite" because the "restitution orders resulted from established state procedure").  Thus, at the pleading stage, plaintiff has adequately established that a post-deprivation remedy does not satisfy due process.  *See Johnson*, 723 F. App'x at 593; *see also Haddon v. City of Cleveland*, 481 F. Supp. 3d 642, 651 (N.D. Ohio 2020) (holding that plaintiffs established a due process claim "where the

11

decision to demolish without a pre-demolition hearing was pursuant to established state procedures and not due to the unauthorized or random act of an official"). The Court therefore denies this portion of defendant's motion.

### 2) *Substantive Due Process*

Substantive due process is based on the Fourteenth Amendment's protection against "arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). The Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a "fundamental" right; and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary that it "shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). Courts "apply the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*." *Id*. (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)). Here, plaintiff challenges executive action, *see* Docket No. 26 at 12-13, ¶¶ 77-91,[6] and therefore the "shocks the conscience" standard applies. *See Woodard*, 912 F.3d at 1300.

---

[6] Plaintiff named the "Board of County Commissioners of Larimer County" as the defendant in this case pursuant to Colo. Rev. Stat. § 30-11-105. Docket No. 26 at 3, ¶ 10. "Under Colorado law, any suit against a county must be brought in the name of the 'board of county commissioners of the county.'" *Est. of Blodgett v. Correct Care Sols., LLC*, No. 17-cv-2690-WJM-NRN, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018) (quoting Colo. Rev. Stat. § 30-11-105). "An action attempted to be brought under any other designation is a nullity, and no valid judgment can enter in such a case." *Id*. (quoting *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967)). County commissioners often exercise "executive, legislative and quasi-judicial responsibilities." *Beacom In & For Seventeenth Jud. Dist., Adams Cnty. v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 657 P.2d 440, 445 (Colo. 1983). Here, plaintiff challenges the demolition of the Bridge, *see* Docket No. 26 at 12-13, ¶¶ 77-91, which is an executive action, not a

"Executive action that shocks the conscience requires much more than negligence." *Id*. "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Id*.; *see also Onyx Props., LLC v. Bd. of Cnty. Commr's*, 838 F.3d 1039, 1049 (10th Cir. 2016) ("Intentionally or recklessly causing injury through the abuse or misuse of governmental power is not enough."). "Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Woodard*, 912 F.3d at 1300 (quoting *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013)) (internal quotations omitted). "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id*. (citation omitted). "The behavior complained of must be egregious and outrageous." *Id*. (citation omitted); *see also Lindsey*, 918 F.3d at 1116 (noting that "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." (quoting *Onyx Props., LLC,* 838 F.3d at 1048-49); *Bruce*, 2023 WL 8300363, at *15 ("To be conscience shocking, a defendant's behavior must lack 'any reasonable justification in the service of a legitimate governmental objective.'" (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

In deciding whether conduct shocks the conscience, courts "must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope, (2) the concern that

---

legislative function.  *See Bruce v. Ogden City Corp*., 2023 WL 8300363, at *15 (10th Cir. Dec. 1, 2023) (noting that a city's "demolition order" is "executive action").

13

§ 1983 not replace state tort law, and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Isaacs v. Konawa Pub. Sch.*, 2022 WL 1100402, at *3 (10th Cir. Apr. 13, 2022) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)); *see also Onyx Properties LLC*, 838 F.3d at 1049 (noting that the restricted scope of substantive due process claims is "readily apparent in cases involving land use").

Defendant argues that the Court should dismiss plaintiff's substantive due process claim because the amended complaint contains no allegations suggesting that defendant's actions satisfy the conscience-shocking standard. Docket No. 34 at 15. Defendant contends that other courts have found no substantive due process violation where city officials demolished private property. *Id*. (citing *LaRue v. City of Hays*, 2012 WL 2871718, at *10 (D. Kan. July 11, 2012); *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552-53 (7th Cir. 2014) (unpublished)).

Plaintiff responds that "Defendant's actions in removing the Bridge were arbitrary and capricious." Docket No. 36 at 15. Plaintiff argues that the complaint plausibly alleges that defendant "demolished all access to her real property without hearing under the guise of emergency when in fact it was for the purpose of improving the beauty and recreational use of the River." *Id*. Furthermore, plaintiff asserts that, "not only did Defendant reject multiple engineered repair plans, but Defendant's own repairs proved the Bridge could easily be repaired." *Id*.

The Court finds that plaintiff has failed to plausibly allege that defendant's behavior "shocks the judicial conscience." *See Woodard*, 912 F.3d at 1300. Although the complaint alleges that defendant's actions in removing the Bridge were not

14

necessary because the Bridge was not "an imminent danger" and could have "easily" been repaired, see Docket No. 26 at 13, ¶ 89, the complaint contains no allegations suggesting that defendant acted egregiously or outrageously in ordering the demolition. The shocks-the-conscience standard is "exacting." Lindsey, 918 F.3d at 1116.  For example, the Supreme Court has found that a "sheriff's application of stomach pumping to force vomiting" shocked the conscience, see Woodard, 912 F.3d at 1300 (citing Rochin v. California, 342 U.S. 165, 172 (1952)), while the Tenth Circuit found that a "social worker's various actions that led to physical and sexual abuse of a minor shocked the conscience." Id. (citing T.D. v. Patton, 868 F.3d 1209, 1213 (10th Cir. 2017)).  By contrast, the Tenth Circuit recently dismissed a substantive due process claim arising out of a city's demolition order for a building damaged by a fire because plaintiff failed to establish that the city's actions "could be deemed to shock the conscience." Bruce, 2023 WL 8300363, at *14-16.  The Tenth Circuit explained that municipalities have an important interest in demolishing structures that are "deemed a nuisance or threat to public health or safety." Id. at *15.  The Tenth Circuit noted that, to its knowledge, "no court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety." Id. (citing Harris v. City of Akron, 20 F.3d 1396, 1405 (6th Cir. 1994)).  Plaintiff has cited no authority suggesting that a governmental entity's action of issuing a demolition permit when a structure could have been repaired constitutes action so "egregious" or "outrageous" that it shocks the judicial conscience. See id.  Accordingly, the Court

15

grants this portion of defendant's motion and dismisses with prejudice the portion of claim two alleging a substantive due process violation.

### B. Takings Claim

Plaintiff's first cause of action asserts an "inverse condemnation" or takings claim under Article II, Section 15 of the Colorado Constitution. Docket No. 26 at 11-12, ¶¶ 67-76. Article II, Section 15 provides that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. Art. II, § 15.[7] "A taking occurs when a government entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property." *Forest View Co. v. Town of Monument*, 464 P.3d 774, 778 (Colo. 2020) (internal alterations and citation omitted). The takings provision of the Colorado Constitution encompasses three types of claims: "a taking that involves the government's physical occupation of land; (2) a regulatory taking, in which extensive regulatory interference deprives a property owner of all or almost all use of his land; and (3) a damaging, in which governmental activity has damaged an adjacent landowner's land." *Id.* The "damage" clause applies to "situations in which the damage is caused by government activity in areas adjacent to the landowner's land." *Animas Valley Sand & Gravel, Inc.*,

---

[7] The Colorado Supreme Court has generally "interpreted the Colorado takings clause as consistent with the federal clause." *Animas Valley Sand & Gravel, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of La Plata*, 38 P.3d 59, 64 (Colo. 2001). Although plaintiff does not bring a takings claim under the U.S. Constitution, the Court may "look to both Colorado and federal case law for guidance." *See id.*; *see also McIntyre v. Bd. of Cnty. Comm'rs of Cnty. of Gunnison, Colo.*, No. 06-cv-00401-REB, 2007 WL 926883, at *3 n.6 (D. Colo. Mar. 26, 2007), *aff'd*, 252 F. App'x 240 (10th Cir. 2007) (unpublished) ("Because the Colorado takings clause is consistent with, and at least as broad as, the Fifth Amendment Takings clause, federal caselaw is instructive in deciding inverse condemnation claims under the Colorado Constitution.").

16

38 P.3d at 63.  Plaintiff asserts that the "third form of taking occurred here: damage from government activity."  Docket No. 36 at 6.  Defendant argues that plaintiff's first cause of action does not state a takings claim under the Colorado Constitution because the removal of the Bridge was made pursuant to the County's police power, not the power of eminent domain.  Docket No. 34 at 6.

When the government "acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause."  *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) (unpublished) (applying federal and Colorado law); *see also City & Cnty. of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 766-67 (Colo. 1992) ("Police power should not be confused with eminent domain, in that the former controls the use of property by the owner for the public good, authorizing its regulation and destruction without compensation, whereas the latter takes property for public use and compensation is given for property taken, damaged or destroyed." (quoting *Lamm v. Volpe*, 449 F.2d 1202, 1203 (10th Cir. 1971)); *Young v. Larimer Cnty. Sheriff's Off.*, 356 P.3d 939, 944 (Colo. App. 2014) (explaining that property seized pursuant to the government's "police power" does not state an inverse condemnation claim under the Colorado Constitution); *Patty v. United States*, 136 Fed. Cl. 211, 213 (2018) ("The Supreme Court has long taught that the [federal] Takings Clause is not implicated when the government exercises its police power.").  Although the boundaries of the police power are "difficult to discern," the police power generally encompasses "the authority to provide for the public health, safety, and morals."  *Lech*, 791 F. App'x at 718 (citations omitted).  In contrast, eminent domain "takes property for public use."  *Id.* (quoting *Lamm*, 449 F.2d at 1203).

17

Defendant argues that the amended complaint fails to allege any facts showing that defendant, acting pursuant to its eminent domain power, removed the Bridge for "public use." Docket No. 34 at 8-9. Defendant contends that it removed the Bridge pursuant to its "police powers" because the code official determined that the damaged Bridge was an imminent danger to public safety and property. *Id*. at 11-12 (citing Docket No. 26 at 6, ¶¶ 35-36). Because defendant removed the Bridge pursuant to its police powers, defendant argues that the first claim fails as a matter of law. *Id*. at 12.

Plaintiff argues that defendant was not exercising its police powers when it demolished the Bridge. Docket No. 36 at 8-9. Plaintiff asserts that her engineer provided repair plans to defendant and informed defendant that the Bridge did not represent an imminent danger. *Id*. at 9. Because the Bridge was not an "imminent danger," plaintiff argues that defendant could not demolish it pursuant to its police powers. *Id*. at 8 (citing *Srb v. Bd. of Cnty. Comm'rs, Larimer Cnty*., 601 P.2d 1082, 1085 (Colo. App. 1979) ("when property is taken by the state or one of its political subdivisions under circumstances of imminent necessity, the failure justly to compensate the owner does not violate Art. II, § 15"). Furthermore, plaintiff argues that the complaint alleges that defendant removed the Bridge for the purpose of advancing the River's designation as a Wild and Scenic River under the System. *Id*. at 10.

The Court finds that the complaint plausibly alleges that defendant demolished the Bridge pursuant to its eminent domain power, not its police power. The complaint alleges that the County has an interest in maintaining the River's status as a Wild and Scenic River to preserve the River for "the enjoyment of present and future generations." Docket No. 26 at 3-4, ¶¶ 17-18, 20. Within the System, the River's

management plan encourages the modification or removal of low bridges and pylons on a voluntary basis. *Id*. at 4, ¶ 19.  USDA officials informed the County that the Bridge should have no in-stream supports and should be higher. *Id*., ¶ 22.

After debris collided with the Bridge on July 20, 2021 during a rainstorm, the Bridge remained standing with a "vertical dip" of less than one foot. *Id*. at 4-5, ¶¶ 23, 25, 27, 30.  Although the County's Notice of Imminent Danger concluded that the Bridge could pose safety risks downstream if more debris collided with the Bridge, *see id*. at 6, ¶ 35; Docket No. 34-1 at 1, plaintiff's engineer disagreed with that assessment and concluded that the Bridge did not pose any imminent danger.  Docket No. 26 at 7, ¶ 45.  On August 2, 2021, plaintiff's engineer gave defendant a stabilization plan to replace the center pier, but defendant's engineer responded that the code does not allow center piers. *Id*. at 7-8, ¶¶ 46-47.  The County's code requirements for all bridges on the River were established according to the System's guidelines. *Id*. at 4, ¶ 21.  Plaintiff's engineer then provided a stabilization plan that did not include a center pier, but defendant refused to consider the plan. *Id*. at 8, ¶¶ 48-49.  Defendant subsequently performed temporary repairs to allow pickup trucks to drive across the Bridge, demonstrating that the Bridge could be repaired. *Id*. at 8, ¶¶ 50-51.  On August 4, 2021, defendant demolished the Bridge because the proposed in-stream pylons would "interfere with the natural, cultural, and recreational value of the River." *Id*., ¶¶ 51-52.[8]

---

[8] Defendant argues that the Court should disregard plaintiff's allegation – that defendant demolished the Bridge because the proposed in-stream pylons would "interfere with the natural, cultural, and recreational value of the River" – as conclusory because it contradicts the reasons stated in the Notice of Imminent Danger.  Docket No. 34 at 9 (quoting Docket No. 26 at 8, ¶ 52).  The Court finds that plaintiff's allegation is well-pled and therefore rejects defendant's argument.  At the summary judgment stage,

The demolition furthered the County's goal of preserving the River's status as a Wild and Scenic River.  *Id*., ¶ 53.  The Court finds that these allegations plausibly allege that defendant demolished the Bridge for "public use" under its eminent domain power, rather than for "public health, safety, and morals" under its police power.  *See Lech*, 791 F. App'x at 718.  Accordingly, the Court denies this portion of defendant's motion.

## IV.   CONCLUSION

It is therefore

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF 26) [Docket No. 34] is **GRANTED in part and DENIED in part**.  It is further

**ORDERED** that the portion of claim two alleging a substantive due process violation is **DISMISSED with prejudice**.

DATED August 20, 2024.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

---

defendant will have an opportunity to present evidence regarding its reason for demolishing the Bridge.